# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELIZABETH V. SMITH**<br>100 Whispering Willow Way<br>Sandy Spring, MD 20860<br><br>**Plaintiff,**<br><br>v.<br><br>**GEORGETOWN UNIVERSITY**<br>3700 O Street, N.W.<br>Washington, DC 20005<br><br>**Defendant.** | **CIVIL ACTION NO:** _____<br><br>**JUDGE** _____<br><br>**MAGISTRATE JUDGE** _____<br><br>**JURY DEMAND REQUESTED** |

## CIVIL ACTION COMPLAINT

**NOW COMES** Plaintiff Elizabeth V. Smith ("Plaintiff"), by and through undersigned counsel, and for her Complaint against Defendant Georgetown University ("Defendant") hereby states as follows:

## INTRODUCTION

1. Plaintiff initiates this action to redress Defendant's violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, and other D.C. statutory and/or common law. By and through its conduct, Defendant interfered with Plaintiff's rights under the FMLA by: (a) failing to timely notify Plaintiff of her right to protected medical leave upon learning of Plaintiff's statutorily qualifying medical condition and Plaintiff's need for medical leave; (b) failing to timely provide Plaintiff with the statutorily required FMLA Rights, Responsibilities and Eligibility Notices upon learning of Plaintiff's need for protected medical leave; (c) failing to timely provide Plaintiff with the statutorily required Designation Notices

upon learning of Plaintiff's need for protected leave; and (d) insisting that Plaintiff return to the workplace despite having express and obvious knowledge that Plaintiff continued to suffer from a serious health condition entitling her to continued job-protected medical leave.. Defendant also retaliated against Plaintiff in contravention of both the FMLA and DC FMLA by: (a) repeatedly contacting Plaintiff during her FMLA-protected leaves about non-essential work related matters that could have been readily handled by other actively working employees; (b) requesting that Plaintiff return to the office during her FMLA-protected leave in order to attend non-critical meetings and/or return computer equipment that was inessential to Defendant's daily operations; (c) posting both internal and external job postings for full-time, <u>permanent</u> placement into Plaintiff's employment position while Plaintiff was on protected medical leave; (d) removing essential duties from Plaintiff's role while Plaintiff was on protected leave and failing to restore those duties upon Plaintiff's return from protected leave; (e) unjustifiably clearing and removing Plaintiff's belongings from Plaintiff's workspace during Plaintiff's protected leave—resulting in substantial damage to Plaintiff's property; (f) actively interviewing candidates for placement into Plaintiff's position so as to dissuade Plaintiff from further exercising her FMLA rights; (g) criticizing Plaintiff's performance and questioning Plaintiff's commitment to her position when Plaintiff took time off to recover from medical treatment and/or attend mandatory medical appointments; (h) decreasing Plaintiff's job responsibilities and excluding Plaintiff from trainings, presentations and department meetings upon Plaintiff's return from protected leave; (i) attempting to force Plaintiff into early retirement; and (j) making Plaintiff's working conditions so intolerable and hostile so that Plaintiff was forced to resign from her employment via early retirement. As a result, Plaintiff has suffered damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff has raised federal claims herein under the FMLA. This Court, pursuant to 28 U.S.C. §1367(a), also has supplemental jurisdiction over any claims for relief that arise under DC statutory or common law because such claims form part of the same controversy and derive from the same set of facts.

3. This Court has personal jurisdiction over Defendant because Defendant resides within this judicial district. Further, Defendant, by systematically soliciting business in the District of Columbia and operating a business location therein, has sufficient minimum contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice.

4. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because Defendant conducts substantial, systematic, and continuous activity in this district and is subject to personal jurisdiction in this district, and because all of the acts underlying this lawsuit occurred in this district.

## PARTIES

5. The foregoing paragraphs are incorporated herein as if set forth in full.

6. Plaintiff Elizabeth V. Smith is an adult individual with an address as set forth above. At all times relevant to this action, Plaintiff was an employee of Defendant who worked in this judicial district.

7. Defendant is a private educational institution with its principal place of business in the District of Columbia and located at 37th and O Streets. At all times relevant to this action, Defendant was Plaintiff's employer.

8. At all times relevant to this action, Defendant conducted its business operations within this judicial district.

9. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL ALLEGATIONS

10. The foregoing paragraphs are incorporated herein as if set forth in full.

11. Plaintiff commenced her employment with Defendant in 1992 and most recently worked for Defendant as the Reporting & Web Services Analyst, Academic Records Retention.

12. Plaintiff was promoted into the Reporting & Web Services Analyst position in approximately October 2016.

13. As the Reporting & Web Services Analyst, Plaintiff was an employee of the University's Office of the Registrar ("OUR").

14. At all times during her tenure with Defendant, Plaintiff was a successful employee who excelled in her performance and exhibited a demonstrated commitment to her position. Plaintiff's positive contributions towards Defendant's business operations and its educational mission were reflected in the yearly performance evaluations and salary increases that she received.

15. On November 29, 2016, Plaintiff informed Vicki Browne-Moore, Defendant's Director for HR Client Services, that Plaintiff had recently had a biopsy and thereafter had been diagnosed with breast cancer.

16. Plaintiff explained to Ms. Browne-Moore that Plaintiff's type of breast cancer was an aggressive one—the treatment and management of which required immediate surgery and

subsequent chemo and radiation therapies.

17.     On the same day she notified Defendant of her breast cancer diagnosis and doctor-recommended course of continuing treatment, Plaintiff also requested that Ms. Browne-Moore provide Plaintiff with information about medical leave in order to accommodate her December 1, 2016, surgery, post-surgical recovery and continuing cancer treatment.

18.     Despite being fully aware that Plaintiff's medical condition triggered its obligations under the FMLA, Defendant failed to provide Plaintiff with any information related to Plaintiff's eligibility and/or legal right to either continuous or intermittent FMLA leave.

19.     Providing Plaintiff with information about her eligibility and/or legal right to either continuous or intermittent FMLA leave during this period would have allowed Plaintiff to schedule her necessary surgery and post-operative recovery without fear of losing her employment and/or further aggravating her serious medical condition.

20.     On December 1, 2016, at approximately 8:00 p.m., Plaintiff underwent a surgical breast lumpectomy as part of her cancer treatment regimen.

21.     On December 2, 2016, at approximately 7:00 a.m., Plaintiff returned to work, despite having undergone invasive and painful surgery less than twelve (12) hours earlier.

22.     Plaintiff returned to work less than twelve (12) hours after her lumpectomy because Defendant had failed to properly inform Plaintiff of her entitlement to twelve (12) weeks of paid or unpaid leave under the FMLA and Plaintiff feared that her medically-related absences would jeopardize her continued employment with Defendant.

23.     Although Ms. Browne-Moore and Plaintiff's supervisor, Vice-President & University Registrar Annamarie Bianco were aware of Plaintiff's serious medical condition and recent lumpectomy, Defendant failed to inform Plaintiff that she was entitled to FMLA leave and

that such leave would afford her the ability to take time off work in order to focus on her post-surgical recovery. Instead, Plaintiff's supervisors insisted that she remain at work on that day, despite Plaintiff being in obvious pain and discomfort.

24. On December 5, 2016, Plaintiff again contacted Ms. Browne-Moore, informing Ms. Brown-Moore that her pain had exacerbated and her medical condition had worsened since her December 2, 2016, return to work. At this time, Plaintiff informed Defendant that had she had not received any information or other resources regarding her leave eligibility and reiterated her request for information regarding medical leave that would allow her to tend to her serious medical condition without fear of reprisal.

25. Plaintiff also informed Ms. Brown-Moore on December 5th that she would continue to perform work at the office during her post-surgical recovery and subsequent cancer treatment because she was fearful of losing her job and health benefits.

26. On December 6, 2016, Defendant first responded to Plaintiff's request for information about medical leave and provided Plaintiff with: (a) Leave Request Form; (b) Notification and Rights & Responsibilities Letter; and (c) FMLA Certification Form.

27. Plaintiff returned all forms required to confirm her eligibility and approval for FMLA-protected leave on December 7, 2016.

28. Despite receiving all documents necessary to certify and approve Plaintiff's FMLA, Defendant failed to process Plaintiff's request for FMLA and also failed to provide Plaintiff with any Designation Notice that set forth either the approval or denial of Plaintiff's request for FMLA leave.

29. Further, Defendant failed to advise Plaintiff of her leave allotment, continuation of benefits and job restoration rights under the FMLA.
6

30.     Instead of providing Plaintiff with paid or unpaid FMLA leave and its statutory job protections, Ms. Bianco insisted that Plaintiff enter into a teleworking agreement, where Plaintiff would continue to come into the office during her cancer treatments and occasionally, when permitted, work from home when she was feeling ill.

31.     Upon learning of Plaintiff's serious health condition and need for medical leave, Ms. Bianco immediately posted internal and external job openings for permanent placement into Plaintiff's Reporting & Web Services Analyst position.

32.     From January 2017 through September 2017, Plaintiff endured numerous chemotherapy and radiation treatments, all while working for Defendant's OUR.

33.     Despite knowing that Plaintiff needed appropriate time off work in order to recover from her continuing health care treatments for cancer, Defendant failed to advise Plaintiff of her right to continuous and/or intermittent FMLA leave during this period.

34.     Instead, Defendant, by and through its agents Ms. Bianco and Deputy Registrar Amynah Mithani, insisted that Plaintiff continue to work in office both during and after Plaintiff's chemotherapy and radiation treatments.

35.     Mses. Bianco's and Mithani's collective actions in this regard led Plaintiff to believe that her job was in jeopardy if she took the necessary time off to engage in the continuing medical treatment for her serious health condition and/or took time off to properly recover from her medical condition and/or treatments.

36.     Between January 2017 and September 2017, Mses. Bianco and Mithani repeatedly antagonized Plaintiff while she continued to work while receiving medical treatments for her serious health condition.

37.     For example, Ms. Bianco would often micromanage Plaintiff when Plaintiff

returned to the office shortly after receiving cancer treatments. During these times, Ms. Bianco would find contrived issues with Plaintiff's work product and would also often manufacture purported deficiencies with the pace in which Plaintiff completed her work, telling Plaintiff "You're not even doing anything!"

38.     Mses. Bianco and Mithani also regularly dissuaded Plaintiff from taking any time off to recover from her cancer treatments and routinely expressed displeasure when Plaintiff needed time off to attend medical appointments and receive continuing treatment for her serious health condition.

39.     Mses. Bianco and Mithani also unjustifiably removed Plaintiff's social media website updating and other essential duties during this time and re-assigned those tasks to other employees who were not attempting to exercise their statutorily-protected rights under the FMLA.

40.     When Plaintiff's health failed to allow her to come into the office to work, Mses. Bianco and Mithani often called Plaintiff and/or sent Plaintiff emails requesting that Plaintiff respond to and/or work on non-essential matters that could have easily been handled by other OUR employees or resolved upon Plaintiff's return to the office. Such conduct hindered Plaintiff's ability to properly tend to her serious health condition and/or to recover from her continuing medical treatment.

41.     At no time during this period did Mses. Bianco, Mithani or any other of Defendant's agents advise Plaintiff of her statutory rights to take medically-appropriate leave for her serious health condition.

42.     As a result of a retaliatory environment, and without the appropriate medical leave and time off from work, Plaintiff's physical and mental health continued to deteriorate between

January 2017 and September 2017, resulting in Plaintiff having to endure additional medical appointments and modified and supplemental medical treatments, and also to incur substantial medical expenses.

43. Given the hostile and retaliatory treatment that she received from Mses. Bianco and Mithani, Plaintiff also began consulting with a therapist in order to continue to work and function within the negative working environment promulgated by Defendant and its agents.

44. Based on both her oncologists' and therapist's assessment that Plaintiff's hostile work environment and denial of appropriate leave was adversely impacting both her treatment and recovery, Plaintiff again requested FMLA-protected leave in September 2017.

45. As with her November 2016, request for FMLA leave, Defendant failed to timely provide Plaintiff with the statutorily-required Eligibility, Rights and Responsibilities and Designation Notices relative to her leave request.

46. Defendant finally approved Plaintiff's September 2017 request for FMLA-protected medical leave.

47. Plaintiff's FMLA-protected leave commenced on October 1, 2017.

48. While Plaintiff was out on FMLA-approved leave, Mses. Bianco and Mithani contacted Plaintiff on multiple occasions about working on non-essential matters during Plaintiff's recuperation period.

49. Plaintiff objected to receiving these work-related tasks while on medical leave and informed Defendant that she could not complete any work because she was still undergoing cancer treatments, was in tremendous pain and on heavy medication.

50. On other separate occasions, Defendant demanded that Plaintiff return to the office during her FMLA-protected leave in order to attend non-critical meetings and/or return

9

computer equipment that was inessential to Defendant's daily operations.

51. Plaintiff informed Defendant that she was unable to return to the office during her protected medical leave; however, Defendant, despite Plaintiff's objections, continued to pressure Plaintiff to physically return to the office and/or respond to work related matters during her medical leave.

52. On yet another occasion during Plaintiff's FMLA leave, Ms. Bianco removed all personal and work items from Plaintiff's work cubicle, placing those items on the floor. Ms. Bianco cleared Plaintiff's work space despite the fact that: (1) no other employee had been assigned to OUR during that period; and (2) even if another employee had been assigned to OUR during this time, there were other available workstations for such employees to utilize.

53. Ms. Bianco's retaliatory and unjustifiable decision to clear out Plaintiff's workspace during Plaintiff's FMLA-protected leave resulted in Plaintiff's personal belongings being irreparably water damaged during a November 2017 flood within OUR.

54. Defendant failed to reimburse Plaintiff for her water-damaged property—damage caused by Ms. Bianco's purposeful act.

55. Plaintiff returned from her medical leave and to Defendant's workplace on or about November 27, 2017.

56. Within weeks of Plaintiff's return from medical leave, Mses. Bianco and Mithani began removing the remaining essential functions of Plaintiff's Reporting & Web Services Analyst position and reassigned those duties to other OUR employees.

57. After Plaintiff's return from protected leave, Mses. Bianco and Mithani also failed to invite Plaintiff to any meetings, presentations, trainings or other updates that occurred within OUR.

58.     After enduring several weeks of exclusionary and retaliatory conduct by Mses. Bianco and Mithani, Plaintiff contacted Defendant's Human Resources Client Services Partner Tania Draghi regarding Plaintiff's concerns about the discriminatory and retaliatory treatment she had experienced upon her return from FMLA-protected leave.

59.     After hearing Plaintiff's concerns, Ms. Draghi snidely remarked to Plaintiff, "Don't you think some of this is your fault?"

60.     Ms. Draghi did not open an investigation into Plaintiff's allegations; did not otherwise escalate Plaintiff's concerns; and did not provide Plaintiff with any offer of assistance to resolve them.

61.     Unimpeded in their retaliatory behavior towards Plaintiff, Mses. Bianco and Mithani continued to retaliate against Plaintiff for Plaintiff's rightful exercise of her FMLA leave, and also continued to interfere with Plaintiff's continued attempts to exercise her FMLA rights. Mses. Bianco and Mithani engaged in said conduct upon Plaintiff's return from her October 1, 2017, FMLA leave and continued said conduct until Plaintiff's constructive discharge on September 4, 2018.

62.     Between December 2017 and August 2018, Mses. Bianco and Mithani continued to remove responsibilities from Plaintiff's role as Reporting & Web Services Analyst, and to reassign those duties to other lesser qualified employees. By late July 2018, Mses. Bianco and Mithani would only allow Plaintiff to perform entry-level work and also failed to provide Plaintiff with any justification for the changes to Plaintiff's workload.

63.     During this same time period, Mses. Bianco and Mithani also continued in their efforts to dissuade Plaintiff from taking any continuous or intermittent medical leave to tend to her serious health condition and/or to attend medical appointments. Mses. Bianco and Mithani

undertook such efforts even though Plaintiff had and could have utilized her remaining FMLA leave.

64. For example, Mses. Bianco and Mithani would complain when Plaintiff requested time off to recover from medical treatment or to attend medical appointments. They would also imply that Plaintiff's need for medical leave indicated Plaintiff's lack of commitment to both her position and OUR.

65. In May 2018, Ms. Mithani began asking Plaintiff when she was planning to retire from Defendant's employ. Ms. Mithani made this inquiry and encouraged Plaintiff to retire even though Plaintiff had never announced that she was considering retirement in the immediate future.

66. In June 2018, Ms. Bianco again posted internal and external job openings for permanent placement into Plaintiff's Reporting & Web Services Analyst position. Ms. Bianco both posted and interviewed candidates for Plaintiff's position, even though Plaintiff was still actively employed by Defendant.

67. Plaintiff continued to complain about the retaliatory treatment she received from Mses. Bianco and Mithani whenever she requested medical leave, but Defendant failed to address Plaintiff's concerns or take any other corrective action to ensure Plaintiff's ability to exercise her statutorily-protected rights.

68. Defendant's continued and systemic interference with Plaintiff's FMLA rights; Defendant's continued and systemic retaliatory behavior towards Plaintiff after Plaintiff's exercise of her FMLA rights; and the aforementioned continued and systemic harassment that Plaintiff suffered at the hands of Mses. Bianco and Mithani were acts that created working conditions so intolerable—including inferior benefits and the terms and conditions of employment—that Plaintiff had no other alternative but to apply for early retirement and to

separate from her employment with Defendant.

69. Plaintiff's forced early retirement in September 2018 constitutes a constructive wrongful termination in violation of public policy.

70. Since her forced retirement Plaintiff has not been able to find equivalent and/or comparable employment and has suffered loss of income and employer-sponsored benefits.

## COUNT I
## Violation of the Family and Medical Leave Act
## (Interference)

71. The foregoing paragraphs are incorporated herein as if set forth in full.

72. Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act of 1993. 29 U.S.C. § 2611(2)(a)(i)(ii).

73. At the time of her constructive discharge (as of September 2018), Plaintiff had been employed by Defendant for at least twelve months.

74. Further, Plaintiff had worked at least 1,250 hours for Defendant during the twelve months prior to either her requesting her November 2016 or her taking her October 2017 medical leaves of absence.

75. Defendant is a covered employer under the definitional terms of the Family and Medical Leave Act of 1993. 29 C.F.R. § 825.104.

76. Defendant employed in excess of 50 employees within 75 miles of the location where Plaintiff worked during 2016, 2017 and 2018.

77. Plaintiff requested leave for a serious health condition on November 29, 2016.

78. Plaintiff's cancer diagnosis constitutes a serious health condition within the meaning of the FMLA.

79. Plaintiff's serious health condition also required that Plaintiff receive continuing

treatment from a health care provider. 29 C.F.R. § 825.114(a)(2)(i).

80. Plaintiff was entitled to receive leave pursuant to the FMLA and Defendant was not permitted to interfere with or to otherwise restrain Plaintiff's exercise of her statutorily-conferred right to protected medical leave. 29 U.S.C. § 2615(a)(1).

81. Defendant's failure to approve Plaintiff's November 29, 2016, request for leave constitutes Defendant's improper restraint and interference of Plaintiff's statutorily-conferred right to FMLA leave.

82. Defendant's failure to process Plaintiff's November 29, 2016, request for leave and its failure to provide Plaintiff with the statutorily-required Eligibility, Rights and Responsibilities and Designation Notices also constitute Defendant's improper restraint and interference of Plaintiff's statutorily-conferred right to FMLA leave.

83. Throughout Plaintiff's October 1, 2017, FMLA leave, Defendant regularly contacted Plaintiff about non-essential business matters and/or required Plaintiff to accept and complete tasks that could have and should have been assigned to and/or completed by another one of Defendant's employees.

84. Defendant continued to assign Plaintiff work during her FMLA leave despite Plaintiff's objections to these assignments.

85. Defendant's insistence that Plaintiff continue to accept and complete work assignments during the duration of her October 1, 2017, FMLA-approved leave constitutes Defendant's improper restraint and interference of Plaintiff's statutorily-conferred right to reasonably uninterrupted medical leave.

86. Between December 2017 and September 2018, Defendant's failure to provide Plaintiff with continuous and/or intermittent FMLA leave in order to tend to her serious health

condition and/or attend continuing medical treatment by her medical provider constitutes Defendant's improper restraint and interference of Plaintiff's statutorily-conferred right to FMLA leave.

87. Defendant's violations of the FMLA were repeated, willful and intentional. Accordingly, a three-year statute of limitations period governs this claim pursuant to 29 C.F.R. §825.400(b).

88. As a proximate cause of Defendant's aforementioned conduct, Plaintiff experienced a loss of wages, endured additional medical appointments and modified and supplemental medical treatments, and was also required to expend additional personal sums on medical expenses and necessities for her own physical and mental well-being and continued recovery. These costs, expenditures and lost wages are consistent with those recoverable for violations of the FMLA. 29 U.S.C. § 2617.

## COUNT II
### Violations of the Family and Medical Leave Act
### (Retaliation)

89. The foregoing paragraphs are incorporated herein as if set forth in full.

90. Plaintiff was entitled to receive leave pursuant to the FMLA and Defendant was prohibited from retaliating against Plaintiff for the exercise of her substantive rights under the FMLA. 29 U.S.C. § 2615(a)(2).

91. After first learning of Plaintiff's need for FMLA-protected leave, Defendant posted Plaintiff's job and received applications for permanent placement from both internal and external candidates. Such acts were designed to and did discourage Plaintiff from exercising her statutorily-conferred right to FMLA leave.

92. Defendant also permanently reassigned Plaintiff's job duties both during and after

her Plaintiff's October 1, 2017, FMLA leave. Such acts were designed to and did punish Plaintiff for exercising her statutorily-conferred right to FMLA leave.

93. Defendant failed to place Plaintiff in the same or equivalent position upon Plaintiff's return from her October 1, 2017, FMLA leave. This act was designed to and did punish Plaintiff for exercising her statutorily-conferred right to FMLA leave.

94. As detailed herein, Mses. Bianco and Mithani engaged in multiple, overt retaliatory acts both during and after her Plaintiff's October 1, 2017, FMLA leave. Such acts included but were not limited to damaging Plaintiff's personal property; refusing to approve Plaintiff's request for time off to tend to medical matters; creating contrived performance issues; posting Plaintiff's employment position and interviewing candidates for permanent placement into the job actively held by Plaintiff; and suggesting and encouraging Plaintiff to seek early retirement. These acts were designed to and did create a retaliatory and intolerable working environment where Plaintiff was punished for the exercise of her statutorily-created right to protected leave.

95. Mses. Bianco's and Mithani's aforementioned conduct created a working atmosphere where Plaintiff had no other choice but to resign via early retirement because of Defendant's intolerable conditions, which included inferior treatment of Plaintiff, coupled with inferior benefits and terms and conditions of employment.

96. Defendant's retaliatory actions and separate interference violations constitute unlawful acts under the FMLA.

97. Defendant's violations of the FMLA were repeated, willful and intentional. Accordingly, a three-year statute of limitations period governs this claim pursuant to 29 C.F.R. §825.400(b).

98. As a result of Defendant's retaliatory conduct, Plaintiff has incurred a loss of wages, benefits and continuing medical expenses, all within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial, but believed to exceed $25,000. These costs include, without limitation, back pay from the effective date of Plaintiff's separation of employment, lost wages (including any pay differential) from the date of separation, medical expenses and lost employment benefits from the date of separation, the loss of any front pay as of the date of this Complaint, and any interest on the amount thereon as provided in the FMLA. These costs also include attorneys' fees that, as of the date of this Complaint, exceed $5000.

## COUNT III
### Constructive Wrongful Termination in Violation of Public Policy

99. The foregoing paragraphs are incorporated herein as if set forth in full.

100. At all times during her employment with Defendant, Plaintiff performed her duties with the utmost diligence and competence.

101. Plaintiff is informed and believes that Defendant's conduct against her was motivated solely by her decision to exercise her rights to statutorily-protected leave. Plaintiff is further informed and believes and thereon alleges that any other reasons proffered by Defendant were and are pretextual in nature. Defendant intentionally engaged in the aforementioned interference, harassment and retaliation, thereby creating working conditions so intolerable that Plaintiff had no alternative but to resign from her employment via early retirement.

102. By reason of the aforementioned conduct and circumstances, Defendant and its agents have violated the fundamental public policies of the District of Columbia which mandate that employees be free from unlawful discrimination, harassment and retaliation in the exercise of the right to protected leave.

103.    By the aforesaid acts and omissions of Defendants, Plaintiff has been directly and legally caused to suffer the harm and damages alleged herein.

104.    Defendant's acts of FMLA interference and retaliation, as well as those of its agents, and, as alleged at length herein, were outrageous and/or undertaken with reckless indifference to the legal rights of Plaintiff, which includes Plaintiff's legal right to work in an employment environment free from retaliation and/or to engage in protected legal activity without reprisal.

105.    Because the acts taken towards Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive damages in an amount to be proved at trial.

## COUNT IV
### Intentional Infliction of Emotional Distress

106.    The foregoing paragraphs are incorporated herein as if set forth in full.

107.    Defendant's acts of interference and/or retaliation, as alleged at length herein, were extreme and outrageous.

108.    Defendant's acts of interference and/or retaliation, as alleged at length herein, have caused Plaintiff to suffer severe emotional distress.

109.    Defendant knew and intended that Plaintiff would suffer severe emotional distress as a result of the willful and purposeful acts of interference, harassment and retaliation displayed by its agents.

110.    As a result of Defendant's purposeful and willful interference, harassment and retaliatory conduct, as set forth herein and in Count Four, Plaintiff seeks compensatory damages in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Elizabeth V. Smith seeks judgment and prays for the following relief:

a. Statutory damages for lost wages, employment benefits and other compensation, plus interest thereon at the statutory rate, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and 29 U.S.C. § 2617 (a)(1)(A)(ii);

b. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

c. Equitable relief in the form of front pay, as the Court deems appropriate, pursuant to 29 U.S.C. § 2617(a)(1)(B);

d. Compensatory and punitive damages in an amount to be proved at trial;

e. For costs of suit and attorneys' fees; and

f. For such other and further relief as the Court may deem just, proper, and appropriate.

## **Demand for Jury**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Elizabeth V. Smith demands trial by jury for all the issues pleaded herein so triable.

Dated: November 29, 2018                               Respectfully submitted,

        /s/  Cheryl R. Hankerson
Cheryl R. Hankerson, Esquire, (#465747)
The Shanahan Law Firm LLC
1029 Vermont Avenue, NW
Suite 610
Washington, D.C. 20005-3517
Telephone: 202.785.2940
Facsimile: 202.785.2941
Email: chankerson@shanahanfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document, along with the Civil Cover Sheet and Notice of Lawsuit and Summons, was filed with this Court in the above action via the Court's CM/ECF system on this 29th day of November, 2018.

                                          /s/ Cheryl R. Hankerson
                                          Cheryl R. Hankerson, Esquire